## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
Southern Division

CHRISTOPHER WILLIAMS,
    SERVE: 6706 Ridgecrest Road
    New Market, MD 21774

PHILLIP MULLINIX,
    SERVE: 17408 Doctor Bird Road
    Sandy Spring, MD 20860

TANYA RIFFLE,
    SERVE: 2221 Edenbrooke Court
    Eldersburg, MD 21784

SARAH KAYSER,
    SERVE: 13520 Autumn Crest Drive South
    Mount Airy, MD 21771

MICHAEL YETTER.
    SERVE: 759 John Lawrence Dr
    Sykesville, MD 21784

JEFFREY SPECHT,
    SERVE: 342 Point to Point Rd
    Bel Air, MD 21015

        *Plaintiffs,*

    v.

HOWARD COUNTY, MARYLAND,

    SERVE: County Executive, Calvin Ball
    George Howard Building
    3430 Court House Drive
    Ellicott City, MD 21043

        *Defendant.*

Case No.:

## COMPLAINT

1

Plaintiffs Christopher Williams, Phillip Mullinix, Tanya Riffle, Sarah Kayser, Michael Yetter, and Jeffrey Specht ("Plaintiffs"), by and through their undersigned counsel of record, hereby set forth this action against Defendant Howard County, Maryland ("Defendant," "Howard County," or the "County") and allege as follows:

## NATURE OF ACTION AND INTRODUCTORY STATEMENT

1.     This action challenges Howard County's unlawful pay practices toward Plaintiffs, who are current Howard County Police Department ("HCPD") Captains and/or Majors, including: (a) denial of any overtime compensation despite hours worked over forty each workweek, (b) use of hour-for-hour compensatory time in lieu of lawful 1.5 to 1 accrual for public agencies, (c) failure to include non-discretionary payments (e.g., bonuses, clothing allowance, and post-July 1, 2025 Captain specialty pay) in the regular rate, and (d) breach of the County's Pay Plan promise to pay two hours of straight time for each 24 hour period an employee is officially assigned to stand by.

2.     The County's policies and job requirements keep Captains and Majors continuously on call—with formal rapid response expectations (e.g., designated on-call status, mandatory immediate notification of critical incidents, and an on-scene within 45 minutes standard for on-call members)—yet the County never pays stand-by wages and never pays overtime to Captains or Majors.

3.     Plaintiffs consist of current Police Captains and Majors who work or worked for Defendant in Maryland and are or were compensated on an hourly basis.

4.     The County's adopted Pay Plans (FY22–FY26) require stand-by pay: "two (2) hours of pay at the straight time rate" for each 24-hour stand by period, in addition to pay for hours worked between shifts. Captains/Majors are treated as officially assigned to round-the-clock availability, including out-of-county assigned vehicle use so long as they can respond within 45-

2

minutes. The County nonetheless refuses to pay the promised stand-by wages.

5.      Pay statements show Captains and Majors are treated as hourly: pay is calculated as hours × assigned hourly rate (as specified in the County's adopted pay plans), paid leave hours are used to keep weekly hours totals at forty, and compensatory time is credited hour-for-hour (***not*** 1.5 compensatory hours to each 1 hour worked) with caps/payout limits that expressly changed on July 1, 2025. Those practices are irreconcilable with the salary basis test and violate public agency **rules for compensatory time.**

6.      The County has long known of wage payment violations. In 2019, officers filed *Rodriguez et al. v. Howard County* alleging FLSA overtime violations; the Court authorized a notice of collective action—a collective which Plaintiffs Williams, Mullinix, and Riffle joined. Throughout 2024 and 2025, Captains/Majors again pressed for compliance including meetings with County Administration and, on February 11, 2025, presenting a near-final draft memorandum to the Police Chief, which he read and discussed; Plaintiffs advised that a final signed version would be sent to the CAO. After pressure on February 12, 2025, several signatories retracted and the fully executed letter was not delivered, yet the Chief had already reviewed its contents. Despite this, no stand-by wages were ever paid to Plaintiffs.

7.      After Plaintiffs and other Captains/Majors complained about unpaid stand-by wages—including meetings with County leadership on December 18, 2024; January 29, 2025; and a February 12, 2025 memorandum to the Chief requesting implementation consistent with the Pay Plans—Defendant responded with retaliatory threats and actions designed to chill protected activity, such as proposing night-shift reassignments, threatening removal of take-home vehicles, imposing onerous single-person on-call coverage, directing Plaintiffs not to communicate with the County's Chief Administrative Officer ("CAO")/County Human Resources ("HR") regarding pay,

3

pressuring signatories to retract their names from the memorandum, and conditioning pay outcomes on abandoning stand-by claims. These measures would dissuade a reasonable employee from pursuing wage rights and violate the FLSA, 29 U.S.C. § 215(a)(3); and the Maryland Wage and Hour Law's ("MWHL") anti-retaliation provision, Md. Code, Lab. & Emp. § 3-428. Plaintiffs seek make-whole relief and state-law injunctive relief prohibiting further retaliation and expunging retaliatory notations.

8.      Defendant, through its management, is aware that Plaintiffs are not receiving proper overtime compensation, compensatory time, and stand-by pay. Defendant suffers or permits, and in fact requires Plaintiffs to engage in overtime work, including (but not limited to) stand-by work. Additionally, Plaintiffs routinely work 40 hours or more per week without being compensated at the proper overtime rate for hours worked over 40 per week.

9.      Defendant's practice of failing to compensate Plaintiffs proper overtime compensation, compensatory time, and stand-by pay, violates Plaintiffs' rights under the FLSA, the MWHL, Md. Code Lab. & Emp. §§ 3 401 *et seq.*; the Maryland Wage Payment & Collection Law ("MWPCL"); and Maryland common law.

10.     Defendant is liable for its failure to pay Plaintiffs for all overtime work performed, proper compensatory time, and proper stand-by pay.

11.     Plaintiffs seek compensation for all hours worked for Defendant. Plaintiffs additionally seek compensation at the appropriate overtime rate for all hours worked in excess of forty (40) per week, an equal amount of liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

12.     Plaintiffs also bring this action under the MWHL; MWPCL; and Maryland common law for breach of contract, unjust enrichment, and *quantum meruit.*

4

13.     Plaintiffs, who are residents of Maryland and who work for Defendant in Maryland, assert that they are entitled to compensation for all work performed for Defendant, whether the work week totaled greater or fewer than forty (40) hours; compensation at the appropriate overtime rate for all hours worked in excess of forty (40) per week; proper compensatory time; proper stand-by pay, as promised in the County's Pay Plans; an equal amount of liquidated damages; treble damages; prejudgment interest; attorneys' fees and costs; and any other damages or penalties allowed, pursuant to the MWHL; MWPCL; and Maryland common law.

## JURISDICTION AND VENUE

14.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

15.     Additionally, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the pendent state law claims under the MWHL; MWPCL; and Maryland common law because those state law claims arise out of the same nucleus of operative fact as the FLSA claims.

16.     This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts within this District to be held liable for illegal conduct here.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant conducts business within the District of Maryland, and a substantial part of the events or omissions giving rise to these claims occurred in this District.

## COVERAGE

18.     At all relevant times, Defendant is a "public agency" and an "employer" within the meaning of the FLSA, MWHL; MWPCL; and Maryland common law.

19.     At all relevant times, Plaintiffs were employees of a public agency and employed to perform activities of a public agency. 29 U.S.C. §§ 203(e)(2)(C), 203(s)(1)(c), 203(x).

5

20.     At all times material, Defendant was a covered public agency under the FLSA. Coverage for state and local governments does not depend on "enterprise" status; in the alternative, to the extent enterprise coverage is deemed applicable, Defendant meets the definitions in 29 U.S.C. §§ 203(s), 203(r).

21.     The FLSA applies to state and local governments. *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528 (1985).

22.     Plaintiffs are not exempt from the wage and overtime protections of the FLSA and Maryland law because they are not paid on a salary basis. Plaintiffs are not assigned a 29 U.S.C. § 207(k) work period. They are paid on bi-weekly pay periods and ordinarily work day tours; the 40-hour standard workweek applies. Maryland wage statutes apply to work performed in Maryland.

## PARTIES

23.     Plaintiffs Christopher Williams (Captain since 2019; HCPD hire date in 2003), Phillip Mullinix (Captain since 2020; HCPD hire date in 2001), Tanya Riffle (Captain since 2023; HCPD hire date in 1996), Sarah Kayser (promoted to Captain 8/2023 and Major 2/3/2025; HCPD hire date September 27, 2004), Michael Yetter (promoted to Captain 8/2014, HCPD hire date in 3/1995), and Jeffrey Specht (promoted to Captain 3/2022 and Major 6/2024, HCPD hire date in 3/2003) are Maryland residents.

24.     Plaintiffs Kayser and Specht's appointment letter for their promotion to Major places them in the "Executive Exempt" service at Police Management ("PM") pay grade 4.

25.     Captains appear at PM3 in the Classified (merit) tables in the County's Pay Plans; Majors at PM4 in Executive Exempt tables. Each Plaintiff worked greater than 40 hours in one or more workweeks within the limitations period but received no overtime and no promised stand-by

6

pay.

26.    Howard County, Maryland is a charter county; a "public agency" under the FLSA;
and an "employer" under the MWHL, MWPCL, and Maryland common law.

27.    By acting as the Plaintiffs in this action, each Plaintiff, by including his or her name
on the caption of this Complaint, affirms his or her written consent to participate as a plaintiff in
an action to seek unpaid wages and damages under the FLSA.

## FACTUAL ALLEGATIONS

28.    Police Captains and Majors serve day shift tours (e.g., 0700–1500 or 0800–1600)
but remain on-call 24/7 outside that window. The County's job descriptions for Captains require
on-call status and response for operations as needed.

29.    Pursuant to HCPD's General Order "Departmental Vehicle Policy" (effective Jan.
21, 2025): on-call employees may operate assigned vehicles outside the County while on-call so
long as they can respond within 45-minutes.

30.    HCPD's "Patrol Notifications" policy requires immediate Captain notification for
numerous critical incident categories and formalizes escalation if an initial contact is not promptly
answered.

31.    To be off-call, Captains/Majors must designate coverage and notify command with
exact on/off times; otherwise, they remain on-call continuously. Plaintiffs regularly perform these
stand-by obligations between shifts.

32.    Since February 2025, Plaintiffs have been called out repeatedly (at least seven times
for Plaintiffs Williams and Kayser). The Chief verbally reiterated that Captains and Majors are
expected to maintain 24/7 availability and expressed displeasure during a few critical incidents
when certain Captains or Majors did not personally appear despite being in constant

communication with their personnel.    .

33.    The County's FY22-FY26 Pay Plans promises "two hours of straight time pay" for each 24-hour stand-by period, in addition to pay for hours worked between shifts.

34.    The Pay Plans set hourly rates for Lieutenants, Captains, and Majors in the PM schedule. Plaintiffs' pay statements show pay is calculated as hours × hourly rate across various compensation categories (Regular, Holiday, Vacation, Sick, Official Leave), e.g., 80.00 regular hours × $96.23 hourly rate = $7,698.40.

35.    For merit employees treated as exempt (Captains), the County grants hour-for-hour compensatory time, historically capped at 80 hours with an 80-hour payout; CB 034 2025 raises compensatory time caps to 120 hours effective July 1, 2025. Plaintiffs' pay statements show straight time compensatory time credits and tracked compensatory time balances, consistent with a 1-to-1 crediting, not 1.5-to-1.

36.    Majors receive no compensatory time; upon promotion to Major or a higher rank, a Captain's compensatory time bank is cashed out, and Majors thereafter accrue none. Lieutenants and below receive overtime for comparable after-hours work (including telephonic duty above thresholds).

37.    To avoid reductions or deductions in their pay, if Plaintiffs do not work 40 hours in a workweek, Plaintiffs must use paid leave and/or compensatory time to keep recorded hourly pay totals at 40 hours each week.

38.    Because weekly compensation varies with hours recorded and leave is manipulated to maintain a 40-hour baseline, Plaintiffs are not paid on a salary basis and cannot qualify for a white-collar exemption under the FLSA and its implementing regulations.

39.    On July 1, 2024, the County granted all county employees a 5% COLA and all

8

sworn County Police a 4% COLA, including the Chief of Police (who received a 5% COLA). The only sworn members who were not included in the COLA were Captains and Majors; Which are comprised of 12 sworn members out of a department of 509 sworn members.

40.      The County granted Captains and Majors a one-time $5,000 premium effective July 1, 2024, which does not count towards retirement figures (      Lieutenants received separate 4% Cost of Living Adjustments ("COLAs")      ). In addition, Captains and Majors received a one-time award of three administrative leave days. The amount of the Lieutenant's 4% COLA was much greater than the $5000 given to Captains and Majors.

41.      Effective July 1, 2025, all Majors were told they would receive a 4% COLA: 1% effective July 1, 2025, and 3% effective January 1, 2026. Additionally, the County and the Chief also promised an additional step for the rank of Major, effective July 1, 2025. However, during the legislative enactment process, the Majors noted that the step proposal was not effective until January 1, 2026. When the Majors addressed this issue with the Chief, he promised it would get fixed before the pay plan got approved. As it stands to date, the additional step promised is still not effective until January 1, 2026, despite the County's contrary promise.

42.      Plaintiffs' pay statements reflect bonus/premium pay and recurring clothing allowance—non-discretionary sums that must be included in any regular rate calculation—but the County paid no overtime to Plaintiffs at all.

43.      In 2019, HCPD employees filed *Rodriguez et al. v. Howard County*; the Court authorized a notice of the collective action, and Plaintiffs Williams, Mullinix, and Riffle opted in. The County represented in the notice that it "seeks an expeditious resolution of this lawsuit and wants to pay FLSA overtime wages to all employees who are owed them." Despite this, the County continued the pay practices challenged here.

44.     Plaintiffs and other Captains/Majors met with County leadership in December 2024 and January 2025 regarding unpaid stand-by pay; on February 11, 2025, they presented a near-final memorandum (dated February 12, 2025) to the Chief, which he read and discussed, stating that Captains/Majors are eligible for stand-by pay under the County's Pay Plans and announcing a March 3, 2025 target to submit stand-by time entries in Telestaff pending formal approval. At that time, the Chief ordered that the completed memorandum not be sent to the CAO, but to be sent directly to him. Following pressure on February 12, several signatories retracted and the fully executed letter was not delivered to the CAO, although the Chief had reviewed its contents.

45.     The Chief of Police and command-staff managers read and discussed the February 12   memorandum (which was presented to the Chief on February 11, 2025) and were aware of the December and January meetings. The County Administration was likewise on notice through the meetings identified in the memorandum.

46.     Beginning during shortly after      presenting the February 12 memorandum to the Chief (which, again, took place on February 11, 2025), and continuing into spring 2025, Defendant—through managers and agents—took or threatened materially adverse actions designed to deter further wage complaints, including: (a) proposing night-shift reassignments for Captains who participated in the complaints; (b) threatening removal of Plaintiffs' County-provided take-home vehicles; (c) proposing or imposing single-person on-call coverage schemes that increased burdens on complaining Captains; (d) directing Captains and Majors not to communicate with the CAO, Brandee Ganz, about stand-by pay and wages; (e) pressuring signatories to retract their names from the February      12 memorandum; and (f) threatening to withhold or affect COLA and/or step increases if Plaintiffs persisted. These threats and directives were made by individuals with authority over scheduling, assignments, and privileges and would

dissuade a reasonable employee from pursuing wage rights.

47.    Plaintiffs further allege that managers conditioned potential pay outcomes or policy changes on abandoning the stand-by and overtime complaints, reinforcing the coercive effect of the threats described above.

48.    Despite the announced March 3, 2025 target in the February 12 memorandum, the County *did not* implement stand-by pay. No stand-by line items appear on Plaintiffs' subsequent pay statements, while Captains and Majors remained subject to the same on-call and rapid-response obligations.

49.    The temporal proximity between Plaintiffs' wage complaints (December 2024–February 2025) and the threats, directives, and adverse treatment alleged above, coupled with the knowledge of the decisionmakers who received the memorandum, supports a causal connection between Plaintiffs' protected activity and Defendant's retaliatory conduct.

50.    The County failed to maintain accurate records of the hours worked by Captains and Majors as required by the FLSA's recordkeeping regulations, *see* 29 C.F.R. §§ 516 *et seq*. Accordingly, Plaintiffs may establish the extent of uncompensated work as a matter of just and reasonable inference based on their recollection and available records.

51.    Plaintiffs consent in writing to assert their claims for unpaid wages under the FLSA pursuant to 29 U.S.C. § 216(b).  Plaintiffs signed consent forms are filed with the Court as Exhibit A to this Complaint.

## FIRST CAUSE OF ACTION
### Violation of the Fair Labor Standards Act
### 29 U.S.C. §§ 201 *et seq.*

52.    Plaintiffs hereby re-allege and incorporate by reference all paragraphs above as though fully set forth herein.

53.    The County is an "employer" and "public agency" within the meaning of the FLSA,

29 U.S.C. § 203.

54.     The FLSA, pursuant to §§ 206 and 207, requires covered employers, including the County, to compensate all employees at a rate of not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of forty (40) hours in a single workweek.

55.     Employees are exempt from the FLSA's overtime pay requirements only if they are compensated on a salary basis and otherwise satisfy the applicable exemption criteria. Plaintiffs were not paid on a salary basis and therefore are not exempt; to the extent a weekly minimum salary threshold applies during the relevant period, Plaintiffs did not qualify because they were not paid on a salary basis.

56.     The County did not compensate Plaintiffs on a "salary basis" because Plaintiffs' pay varied based on the number of hours worked.

57.     The County did not compensate Plaintiffs on a "salary basis" because the County calculated Plaintiffs' pay by multiplying hours worked, paid leave, and/or compensatory time by the Plaintiffs' hourly rate.

58.     In one or more workweeks during the three-year period preceding filing, Plaintiffs worked in excess of forty (40) hours each workweek but were not paid an overtime premium at 1.5 times their regular rate for those hours.

59.     Plaintiffs are not assigned a 29 U.S.C. § 207(k) work period; the 40-hour standard workweek applies.

60.     The County's Pay Plans provide: "Employees Covered by Fair Labor Standards Act (1) Except as provided in paragraph (2) of this subsection, employees covered by provisions of the Federal Fair Labor Standards Act shall be paid overtime or granted compensatory time at the rate of 1.5 hours pay or 1.5 hours of compensatory time for each hour worked in excess of 40

hours per week. (2) If a supervisor fails to arrange compensatory time off within 60 days of accrual, the employee may request compensatory pay in lieu thereof."

61.    Despite this clear language, the County failed to pay Captains and Majors proper overtime premium compensation.

62.    The County's Pay Plans set hourly rates for Captains and Majors in the PM schedule, and payroll reflects pay calculated as hours recorded × hourly rate (e.g., 80.00 hours × $96.23 hourly rate = $7,698.40), with paid leave used to keep weekly hour totals at 40.

63.    Rather than pay overtime, the County provided, at most, hour-for-hour compensatory time to Captains, historically capped at 80 hours (with an 80-hour payout cap), later increased to 120 hours effective July 1, 2025—policies memorialized in County policies and pay plan materials.

64.    Upon promotion from Captain to Major or another higher rank, any accrued Captain compensatory time bank is cashed out, and Majors thereafter receive no compensatory time, while Lieutenants and below receive overtime for comparable after-hours work.

65.    The County also failed to include non-discretionary remuneration in the regular rate for any overtime hours owed, including:

   (a) the $5,000    premium effective July 1, 2024, announced by the CAO; and

   (b) recurring clothing allowances; and

   (c) beginning July 1, 2025—any Captain "specialty pay" noted in the PM schedule.

66.    County policies required Captains and Majors to remain on-call between shifts and to respond rapidly to critical incidents, including an on-scene within 45 minutes rule for on-call members and formal rapid-notification protocols—further evidencing hours worked outside nominal tours.

67.    The County knew or recklessly disregarded its overtime obligations. In 2019, HCPD employees filed *Rodriguez et al. v. Howard County*, the Court authorized a collective-action notice, and Plaintiffs Williams, Mullinix, and Riffle joined; the County represented in that notice that it "wants to pay FLSA overtime wages to all employees who are owed them," yet it continued denying overtime to Captains/Majors.

68.    By failing to pay 1.5 times Plaintiffs' regular rate for all hours worked over forty (40) each workweek, and by using hour-for-hour compensatory time in lieu of lawful premium compensation (and providing no compensatory time at all to Majors), the County violated the FLSA.

69.    These violations resulted from uniform, County-wide policies applicable to Captains and Majors: hourly PM pay schedules; Telestaff timekeeping; no overtime payments; hour-for-hour comp-time rules and caps (for Captains); and continuous on-call requirements. Liability is provable with common evidence drawn from County pay plans, policies, and payroll/timekeeping records.

70.    The County's failure to pay Plaintiffs for all hours worked and for hours worked over 40 each work week at the proper overtime rate, despite the fact that, upon information and belief, the County knew of its obligations under the law, entitles Plaintiffs to liquidated damages in an amount equal to the amount of unpaid wages under 29 U.S.C. § 216(b), since the County cannot show it acted in good faith, and a three (3) year, rather than two (2) year statute of limitations, since the County's acts constitute willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

71.    Because the County did not keep accurate records of all hours worked, Plaintiffs' proof of overtime may rest on a just and reasonable inference; the burden then shifts to the County

to negate the reasonableness of that inference or produce precise evidence of the hours worked and compensation paid.

72.     As a result of the County's unlawful acts, Plaintiffs have been deprived of compensation for all time worked and proper overtime compensation and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**Violation of the Maryland Wage and Hour Law**
**Md. Code Lab. & Emp. §§ 3-401 *et seq.***

73.     Plaintiffs hereby re-allege and incorporate by reference all paragraphs above as though fully set forth herein.

74.     At all relevant times, Plaintiffs were "employees" and the County was their "employer" within the meaning of the MWHL. All relevant work was performed in the State of Maryland.

75.     In one or more workweeks during the three-year period preceding filing, Plaintiffs worked in excess of forty (40) hours each workweek but were not paid an overtime premium at 1.5 times their regular rate for those hours.

76.     The County's Pay Plans provide: "Employees Covered by Fair Labor Standards Act (1) Except as provided in paragraph (2) of this subsection, employees covered by provisions of the Federal Fair Labor Standards Act shall be paid overtime or granted compensatory time at the rate of 1.5 hours pay or 1.5 hours of compensatory time for each hour worked in excess of 40 hours per week. (2) If a supervisor fails to arrange compensatory time off within 60 days of accrual, the employee may request compensatory pay in lieu thereof."

77.     Despite this clear language, the County failed to pay Captains and Majors proper overtime premium compensation.

78.    The County's Pay Plans set hourly rates for Captains and Majors in the PM schedule, and payroll reflects pay calculated as hours recorded × hourly rate (e.g., 80.00 hours × $96.23 hourly rate = $7,698.40), with paid leave used to keep weekly hour totals at 40—all inconsistent with payment on a "salary basis" under 29 C.F.R. Part 541.

79.    Rather than pay overtime, the County provided, at most, hour-for-hour compensatory time to Captains, historically capped at 80 hours (with an 80-hour payout cap), later increased to 120 hours effective July 1, 2025—policies memorialized in County policies and pay plan materials.

80.    Upon promotion from Captain to Major or another higher rank, any accrued Captain compensatory time bank is cashed out, and Majors thereafter receive no compensatory time, while Lieutenants and below receive overtime for comparable after-hours work.

81.    The County also failed to include non-discretionary remuneration in the regular rate for any overtime hours owed, including:

(a) the $5,000    premium effective July 1, 2024, announced by the CAO; and

(b) recurring clothing allowances; and

(c) beginning July 1, 2025—any Captain "specialty pay" noted in the PM schedule.

82.    County policies required Captains and Majors to remain on-call between shifts and to respond rapidly to critical incidents, including an on-scene within 45 minutes rule for on-call members and formal rapid-notification protocols—further evidencing hours worked outside nominal tours.

83.    The County knew or recklessly disregarded its overtime obligations. In 2019, HCPD employees filed *Rodriguez et al. v. Howard County*, the Court authorized a collective-action notice, and Plaintiffs Williams, Mullinix, and Riffle joined; the County

16

represented in that notice that it "wants to pay FLSA overtime wages to all employees who are owed them," yet it continued denying overtime to Captains/Majors.

84.    By failing to pay 1.5 times Plaintiffs' regular rate for all hours worked over forty (40) each workweek, and by using hour-for-hour compensatory time in lieu of lawful premium compensation (and providing no compensatory time at all to Majors), the County violated the MWHL.

85.    These violations resulted from uniform, County-wide policies applicable to Captains and Majors: hourly PM pay schedules; Telestaff timekeeping; no overtime payments; hour-for-hour comp-time rules and caps (for Captains); and continuous on-call requirements. Liability is provable with common evidence drawn from County pay plans, policies, and payroll/timekeeping records.

86.    Pursuant to the MWHL, Plaintiff are entitled to recover: (1) their unpaid overtime wages, an equal amount as liquidated damages; pre- and post-judgment interest; and reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
**Violation of the Maryland Wage Payment & Collection Law**
**Md. Code Lab. & Emp. §§ 3-501 *et seq.***

87.    Plaintiffs hereby re-allege and incorporate by reference all paragraphs above as though fully set forth herein.

88.    At all relevant times, Plaintiffs were "employees," and the County was their "employer," under the MWPCL.

89.    In one or more workweeks during the three-year period preceding filing, Plaintiffs worked in excess of forty (40) hours each workweek but were not paid an overtime premium at 1.5 times their regular rate for those hours.

90.    The County's Pay Plans provide: "Employees Covered by Fair Labor Standards

Act (1) Except as provided in paragraph (2) of this subsection, employees covered by provisions of the Federal Fair Labor Standards Act shall be paid overtime or granted compensatory time at the rate of 1.5 hours pay or 1.5 hours of compensatory time for each hour worked in excess of 40 hours per week. (2) If a supervisor fails to arrange compensatory time off within 60 days of accrual, the employee may request compensatory pay in lieu thereof."

91.     Despite this clear language, the County failed to pay Captains and Majors proper overtime premium compensation.

92.     The County's Pay Plans set hourly rates for Captains and Majors in the PM schedule, and payroll reflects pay calculated as hours recorded × hourly rate (e.g., 80.00 hours × $96.23 hourly rate = $7,698.40), with paid leave used to keep weekly hour totals at 40—all inconsistent with payment on a "salary basis" under 29 C.F.R. Part 541.

93.     Rather than pay overtime, the County provided, at most, hour-for-hour compensatory time to Captains, historically capped at 80 hours (with an 80-hour payout cap), later increased to 120 hours effective July 1, 2025—policies memorialized in County policies and pay plan materials.

94.     Upon promotion from Captain to Major or another higher rank, any accrued Captain compensatory time bank is cashed out, and Majors thereafter receive no compensatory time, while Lieutenants and below receive overtime for comparable after-hours work.

95.     The County also failed to include non-discretionary remuneration in the regular rate for any overtime hours owed, including:

(a) the $5,000    premium effective July 1, 2024, announced by the CAO; and

(b) recurring clothing allowances; and

(c) beginning July 1, 2025—any Captain "specialty pay" noted in the PM schedule.

96.     County policies required Captains and Majors to remain on-call between shifts and to respond rapidly to critical incidents, including an on-scene within 45 minutes rule for on-call members and formal rapid-notification protocols—further evidencing hours worked outside nominal tours.

97.     The County knew or recklessly disregarded its overtime obligations. In 2019, HCPD employees filed *Rodriguez et al. v. Howard County*, the Court authorized a collective-action notice, and Plaintiffs Williams, Mullinix, and Riffle joined; the County represented in that notice that it "wants to pay FLSA overtime wages to all employees who are owed them," yet it continued denying overtime to Captains/Majors.

98.     By failing to pay 1.5 times Plaintiffs' regular rate for all hours worked over forty (40) each workweek, and by using hour-for-hour compensatory time in lieu of lawful premium compensation (and providing no compensatory time at all to Majors), the County violated the MWPCL.

99.     These violations resulted from uniform, County-wide policies applicable to Captains and Majors: hourly PM pay schedules; Telestaff timekeeping; no overtime payments; hour-for-hour comp-time rules and caps (for Captains); and continuous on-call requirements. Liability is provable with common evidence drawn from County pay plans, policies, and payroll/timekeeping records.

100.    Further, under § 3-501(c)(1) of the MWPCL, "wage" includes all remuneration promised for service. The County's adopted Pay Plans (FY22–FY26) promise two (2) hours of pay at the straight-time rate for each 24-hour stand-by period, in addition to pay for hours actually worked. These promised sums are "wages" due on the regular paydays after the work was performed.

101.    Plaintiffs were officially assigned to stand-by within the meaning of the Pay Plans: HCPD policy requires on-call status with rapid notification and escalation for specified incidents (Patrol Notifications) and allows on-call members to operate County-provided vehicles out-of-county so long as they can respond within 45 minutes. The County's job descriptions likewise require maintaining on-call status.

102.    Despite continuous stand-by assignments, the County failed to pay Plaintiffs their stand-by wages on the regular paydays.

103.    After meetings with County Administration on December 18, 2024 and January 29, 2025, Captains/Majors presented a near-final memorandum to the Chief on February 11, 2025, which he read and discussed, stating that Captains and Majors are eligible for stand-by pay under the Pay Plan and announcing a March 3, 2025 target to begin submitting stand-by entries in Telestaff; following pressure on February 12, 2025, several signatories retracted and the fully executed letter was not delivered to the CAO, yet the County issued no payments thereafter.

104.    The duty to pay stand-by wages arises from adopted Pay Plans and uniform on-call policies; Plaintiffs gave written notice on Feb. 12, 2025; and the County still made no payments.

105.    Liability turns on uniform County policies, contracts, and records applicable to all Plaintiffs.

106.    Pursuant to the MWPCL, Plaintiffs are entitled to recover their: (a) unpaid overtime wages; (b) unpaid stand-by wages (two hours' straight-time pay per 24-hour stand-by period) for each pay period within the relevant time period; (c) up to treble damages because the County withheld wages not as a result of a bona fide dispute; and (d) reasonable attorneys' fees, costs, and pre-/post-judgment interest.

## FOURTH CAUSE OF ACTION
### Breach of Contract
### Maryland Common Law

107.     Plaintiffs hereby re-allege and incorporate by reference all paragraphs above as though fully set forth herein.

108.     The County's adopted Pay Plans for FY22, FY23, FY24, FY25, and FY26 form part of Plaintiffs' employment contracts and are binding compensation terms for Captains and Majors. Each Pay Plan provides that an employee officially assigned to stand-by shall receive two (2) hours of pay at the straight-time rate for each 24-hour stand-by period, in addition to pay for any hours actually worked.

109.     The County's adopted Pay Plans for each fiscal year are approved every year through legislation and therefore are enacted law.

110.     The County adopted and implemented the Pay Plans by official action; for FY26, the County enacted CB-034-2025, which amended compensation provisions (e.g., compensatory time caps) and confirms that Pay Plan terms are County policy governing employee pay.

111.     Captains appear at PM3 in the Classified (merit) tables; Majors appear at PM4 in the Executive Exempt tables. Plaintiffs Kayser and Specht's appointment letters for their promotion to Major expressly places them at PM4 and ties their compensation to the adopted Pay Plan.

112.     Plaintiffs were officially assigned to stand-by within the meaning of the Pay Plans. HCPD's Patrol Notifications require immediate Captain notification for critical incidents and formalize rapid escalation when a contact is not promptly answered; the County authorizes on-call members to operate assigned vehicles outside the County so long as they can respond within 45 minutes; and job descriptions require maintaining on-call status and responding as needed. These uniform policies designate Captains/Majors as the official point of contact between shifts.

113.    Plaintiffs performed under the contract by remaining on-call/stand-by between shifts, designating coverage when relieved, and responding as required by policy—thereby satisfying the Pay Plans' stand-by conditions on a daily basis during the limitations period.

114.    The County failed to pay the required stand-by wages (two hours' straight-time per 24-hour stand-by period).

115.    After meetings with County Administration on December 18, 2024 and January 29, 2025, Captains/Majors presented a near-final memorandum to the Chief on February 11, 2025, which he read and discussed, documenting those meetings, stating that Captains and Majors are eligible for stand-by pay under the Pay Plan, and announcing a March 3, 2025 target to begin submitting stand-by entries in Telestaff—but after pressure on February 12, 2025, and retractions, the fully executed letter was not delivered to the CAO; the County made no stand-by payments thereafter.

116.    Plaintiffs suffered damages equal to the unpaid stand-by wages (two hours' straight-time for each 24-hour stand-by day within limitations), plus pre- and post-judgment interest. Because the Pay Plan supplies a fixed formula for stand-by pay, damages are liquidated or readily ascertainable from County timekeeping/payroll data (e.g., Telestaff assignments and daily stand-by periods).

117.    Plaintiffs seek expectation damages (unpaid stand-by wages), prejudgment interest, costs, and any further relief the Court deems just.

### FIFTH CAUSE OF ACTION
#### Unjust Enrichment/*Quantum Meruit*
#### (Pled in the Alternative to Breach of Contract)
#### Maryland Common Law

118.    Plaintiffs hereby re-allege and incorporate by reference all paragraphs above as though fully set forth herein to the extent consistent with this alternative claim. *See* Fed. R. Civ.

P. 8(d)(2)–(3).

119.    This claim is pled in the alternative to Plaintiffs' breach-of-contract claim. If the Court determines that the adopted Pay Plans are not enforceable contract terms obligating payment of stand-by wages, or do not provide a complete remedy, then equity requires restitution/*quantum meruit* to prevent unjust enrichment.

120.    Throughout the limitations period, Plaintiffs  conferred a concrete benefit on the County by remaining continuously on-call/stand-by between shifts; being reachable and directing operations during critical incidents; keeping County vehicles and equipment ready and available while on-call; and responding within 45-minutes as required of on-call members. These duties are memorialized in the County's own policies and job descriptions.

121.    The County knew of and accepted this benefit. The County adopted and enforced the policies that assigned Captains/Majors to stand-by; it used their availability to maintain 24/7 command coverage and incident response; and it was formally notified again by the February 11– 12, 2025 events—including the Chief reading and discussing the memorandum on February 11— that stand-by pay was due and that stand-by entries would begin March 3, 2025.

122.    Despite accepting the benefit, the County did not pay for it. Plaintiffs' pay statements show no stand-by wages.

123.    It would be inequitable for the County to retain the operational value of Plaintiffs' continuous stand-by service—codified in County policy and relied upon for incident readiness— without payment.

124.    The reasonable value of the conferred benefit is, at minimum, the two hours of straight-time pay per 24-hour stand-by period reflected in the County's own adopted Pay Plans, which supply an objective benchmark for valuing stand-by service.

125.    Plaintiffs plead that any sovereign-immunity defense to quasi-contract is inapplicable or waived here because the County adopted and implemented the Pay Plans and compensation ordinances (e.g., CB-034-2025) governing employee pay, and this claim is pled only if the Pay Plans are held non-contractual.

126.    Plaintiffs seek restitution/*quantum meruit* equal to the reasonable value of their stand-by service during the limitations period (measured at least by the Pay Plan's two-hours-per-day benchmark), plus pre- and post-judgment interest, costs, and such further relief as the Court deems just.

**SIXTH CAUSE OF ACTION**
**Equitable Tolling, Equitable Estoppel, & Condition Precedent**

127.    Plaintiffs hereby re-allege and incorporate by reference all paragraphs above as though fully set forth herein.

128.    Plaintiffs acted with diligence in pursuing their wage rights. They raised stand-by pay issues with County leadership in December 2024 and January 2025, and on February 11, 2025 presented a near-final memorandum to the Chief, which he read and discussed, asserting eligibility for stand-by pay under the Pay Plans and announcing a March 3, 2025 target to begin entering stand-by in Telestaff; after pressure on February 12, several signatories retracted and the fully executed letter was not delivered to the CAO.

129.    Defendant's compensation structure concealed the violations and impeded discovery by a reasonably diligent employee:

> (a) The Pay Plans list hourly rates for Captains/Majors in the PM schedule, yet the
> County labels them "exempt," creating confusion about overtime rights and
> eligibility;

> (b) Payroll is calculated as hours recorded × hourly rate across various hourly pay

24

codes and categories and uses hour-for-hour compensatory time credits for Captains (rather than 1.5-to-1) with caps/payout limits—masking the absence of any overtime premium while giving the impression that compensatory time is proper and complete; and

(c) No stand-by line items appear on pay statements even after the March 3, 2025 target date referenced in the February 12, 2025 memorandum, reinforcing the message that the County refuses to pay promised stand-by pay.

130. After Plaintiffs complained, managers threatened or proposed night-shift reassignments, removal of County-provided take-home vehicles, and single-person on-call coverage; directed Captains/Majors not to contact the CAO, Brandee Ganz, about pay; threatened to withhold or affect COLA and/or step increases; and pressured signatories to retract their names from the February 11–12, 2025 memorandum. These acts chilled protected activity and reasonably delayed further pursuit of statutory rights.

131. HCPD policies formally assign Captains/Majors to stand-by—e.g., the County authorizes on-call out-of-county vehicle use if the employee can respond within 45 minutes, and Patrol Notifications require rapid contact and escalation—yet the County failed to implement any routine mechanism to record and pay stand-by wages, despite written notice and a stated start date.

132. The County's knowledge is underscored by the 2019 *Rodriguez* FLSA matter, for which a court-authorized notice issued and to which Plaintiffs Williams, Mullinix, and Riffle joined; the County said in that notice it "wants to pay FLSA overtime wages to all employees who are owed them," yet continued practices that denied overtime and stand-by pay to Captains/Majors.

133. The combination of (i) employer-controlled policies that designated Captains/Majors on-call yet withheld stand-by pay; (ii) hour-for-hour compensatory time practices

that obscured the absence of overtime premiums; (iii) the County's failure to implement stand-by after the March 3, 2025 target; and (iv) the threats/directives that chilled further complaints constitute extraordinary circumstances and employer-caused delay justifying equitable tolling and equitable estoppel.

134. Plaintiffs seek equitable tolling (and, where appropriate, equitable estoppel) of all limitations and look-back periods under the FLSA, MWHL, MWPCL, and common-law contract claims to the extent periods would otherwise be reduced by the County's concealment, ambiguity, and coercive conduct described above.

135. No administrative exhaustion is required before filing suit under the FLSA, MWHL, MWPCL, or for breach of contract against the County in these circumstances. To the extent any notice could be deemed a prerequisite under local policy, Plaintiffs provided written notice via the February 12, 2025 memorandum and through subsequent communications; the County declined to implement payment thereafter.

136. Plaintiffs reserve all rights to submit additional facts supporting tolling/estoppel upon review of information produced in discovery.

**SEVENTH CAUSE OF ACTION**
**Retaliation**
**Fair Labor Standards Act, 29 U.S.C. §§ 215(a)(3) *et seq.***

137. Plaintiffs hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

138. Plaintiffs engaged in protected activity by complaining to County leadership about unpaid stand-by wages, including at meetings on December 18, 2024 and January 29, 2025, and by presenting a near-final memorandum to the Chief on February 11, 2025, which he read and discussed, demanding implementation of stand-by pay per the Pay Plans and identifying a March 3, 2025 start for stand-by entries.

139.    The Chief and command-level managers received and discussed the memorandum and prior meetings; County Administration was also on notice through the meetings identified in the memorandum.

140.    After and because of Plaintiffs' protected activity, the County took or threatened materially adverse actions that would deter a reasonable employee from engaging in protected activity, including: night-shift reassignment proposals, threats to remove take-home vehicles, burdensome single-person on-call coverage, directives not to contact the CAO, Brandee Ganz, about pay, pressure to retract names from the February 11–12 memorandum, and threats to withhold or affect COLA and/or step increases if Plaintiffs persisted.

141.    The close temporal proximity between Plaintiffs' complaints (Dec. 2024–Feb. 2025) and the retaliatory threats/directives; the failure to implement stand-by pay after the announced March 3, 2025 date; and the continued reliance on Captains/Majors for on-call coverage together support an inference that the adverse treatment was causally connected to Plaintiffs' protected activity.

142.    The County's retaliation was willful, occurring with knowledge of the FLSA and in the wake of the prior *Rodriguez* FLSA matter for which a Court-authorized notice issued and to which Plaintiffs Williams, Mullinix, and Riffle joined.

143.    Plaintiffs seek all relief authorized by § 216(b), including lost wages/benefits, an additional equal amount as liquidated damages, reinstatement or front pay as appropriate, injunctive relief prohibiting further retaliation and expunging retaliatory notations, and reasonable attorneys' fees, costs, and interest.

**EIGHTH CAUSE OF ACTION**
**Retaliation**
**Maryland Wage and Hour Law, Md. Code Lab. & Emp. §§ 3-428 *et seq.***

144.    Plaintiffs hereby re-alleges and incorporates by reference all paragraphs above as

though fully set forth herein.

145.    Plaintiffs and other Captains/Majors engaged in protected wage activity by complaining internally that Captains/Majors were not receiving stand-by pay required by the County's Pay Plans—raising these issues at meetings with County leadership on December 18, 2024 and January 29, 2025, and by presenting a near-final memorandum to the Chief on February 11, 2025, which he read and discussed, requesting implementation consistent with the Pay Plans and announcing a March 3, 2025 target for submitting stand-by entries in Telestaff.

146.    The Chief of Police and command-level decisionmakers received the memorandum and were aware of the December and January meetings, as reflected in the memorandum's summary and distribution.

147.    After Plaintiffs' protected activity, the County—through managers and agents—took or threatened actions that would dissuade a reasonable employee from further wage complaints, including: (a) proposing night-shift reassignments for participating Captains; (b) threatening removal of take-home vehicles; (c) proposing or imposing single-person on-call coverage that increased burdens on those who complained; (d) directing Captains/Majors not to contact the CAO, Brandee Ganz, about pay; (e) pressuring signatories to retract their names from the February 11–12, 2025 memorandum; and (f) threatening to withhold or affect COLA and/or step increases unless complaints ceased.

148.    Despite the announced March 3, 2025 target, the County did not implement stand-by pay; no stand-by line items appear on Plaintiffs' subsequent pay statements, while the same on-call and rapid-response obligations remained in effect.

149.    The temporal proximity between Plaintiffs' protected activity (Dec. 2024–Feb. 2025) and the threats/directives described above, combined with admitted knowledge by

28

decisionmakers who received the memorandum, supports a causal link between Plaintiffs' protected activity and the County's retaliatory conduct.

150.    As a direct and proximate result of the County's retaliation, Plaintiffs suffered economic loss, emotional distress, and a chilling of their exercise of statutory rights. Plaintiffs seek make-whole relief, injunctive relief prohibiting further retaliation, and expungement of any retaliatory notations from personnel or internal records, together with fees, costs, and interest.

151.    Defendant's retaliatory conduct occurred against the backdrop of prior FLSA overtime litigation—*Rodriguez et al. v. Howard County*—for which the Court authorized a collective-action notice and to which Plaintiffs Williams, Mullinix, and Riffle joined, demonstrating the County's longstanding knowledge of wage obligations and heightening the inference of willfulness here.

152.    The County's retaliation was willful, occurring with knowledge of Maryland law and in the wake of the prior *Rodriguez* FLSA matter for which a Court-authorized notice issued and to which Plaintiffs Williams, Mullinix, and Riffle joined.

153.    Plaintiffs seek all relief authorized, including lost wages/benefits, an additional equal amount as liquidated damages, reinstatement or front pay as appropriate, injunctive relief prohibiting further retaliation and expunging retaliatory notations, and reasonable attorneys' fees, costs, and interest.

## NINTH CAUSE OF ACTION
### Retaliation
### Maryland Equal Pay Act, Md. Code Lab. & Emp. §§ 3-301 *et seq.*

154.    Plaintiffs hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

155.    Pursuant to the Maryland Equal Pay Act, Labor & Employment Section 3-304.1(a), "An employer may not (1) prohibit an employee from (i) inquiring about [or] discussing [] the

wages of the employee … or (3) take any adverse employment action against an employee for (i) inquiring about the employee's wages …"

156.    On information and belief, during the period of Plaintiffs' employment, the County knew or, at least, reasonably should have known of the requirements and prohibitions of the Maryland Equal Pay Act.

157.    Plaintiffs and other Captains/Majors engaged in protected wage activity by inquiring about and discussing wages, including complaints that Captains/Majors were not receiving stand-by pay required by the County's Pay Plans—raising these issues at meetings with County leadership on December 18, 2024 and January 29, 2025, and by presenting a near-final memorandum to the Chief on February 11, 2025, which he read and discussed, requesting implementation consistent with the Pay Plans and announcing a March 3, 2025 target for submitting stand-by entries in Telestaff.

158.    The Chief of Police and command-level decisionmakers received the memorandum and were aware of the December and January meetings, as reflected in the memorandum's summary and distribution.

159.    After Plaintiffs' protected activity, the County—through managers and agents—took or threatened actions that would dissuade a reasonable employee from further wage complaints, including: (a) proposing night-shift reassignments for participating Captains; (b) threatening removal of take-home vehicles; (c) proposing or imposing single-person on-call coverage that increased burdens on those who complained; (d) directing Captains/Majors not to contact the CAO, Brandee Ganz, about pay; (e) pressuring signatories to retract their names from the February 11–12, 2025 memorandum; and (f) threatening to withhold or affect COLA and/or step increases unless complaints ceased.

160.    Despite the announced March 3, 2025 target, the County did not implement stand-by pay; no stand-by line items appear on Plaintiffs' subsequent pay statements, while the same on-call and rapid-response obligations remained in effect.

161.    The temporal proximity between Plaintiffs' protected activity (Dec. 2024–Feb. 2025) and the threats/directives described above, combined with admitted knowledge by decisionmakers who received the memorandum, supports a causal link between Plaintiffs' protected activity and the County's retaliatory conduct.

162.    As a direct and proximate result of the County's retaliation, Plaintiffs suffered economic loss, emotional distress, and a chilling of their exercise of statutory rights. Plaintiffs seek make-whole relief, injunctive relief prohibiting further retaliation, and expungement of any retaliatory notations from personnel or internal records, together with fees, costs, and interest.

163.    Defendant's retaliatory conduct occurred against the backdrop of prior FLSA overtime litigation—*Rodriguez et al. v. Howard County*—for which the Court authorized a collective-action notice and to which Plaintiffs Williams, Mullinix, and Riffle joined, demonstrating the County's longstanding knowledge of wage obligations and heightening the inference of willfulness here.

164.    The County's retaliation was willful, wanton, and malicious, occurring with knowledge of Maryland law and in the wake of the prior *Rodriguez* FLSA matter for which a Court-authorized notice issued and to which Plaintiffs Williams, Mullinix, and Riffle joined.

165.    The County's retaliation against the Plaintiffs was unlawful and in direct violation of their statutory rights and anti-retaliation protections under the Maryland Equal Pay Act.

166.    On information and belief, at the time the County retaliated against the Plaintiffs, the County knew or, at least, reasonably should have known the County's cause, motivation, or

basis for retaliating against the Plaintiffs was in direct violation of the Maryland Equal Pay Act.

167.    Plaintiffs seek all relief authorized, including lost wages/benefits, statutorily provided liquidated damages, interest (both pre- and post-judgment), attorneys' fees, the costs and expenses of this action, and any other and further relief this Court or a jury deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment against Defendant as follows:

1.    Award Plaintiffs actual damages in the amount of all wages found due to Plaintiffs and an award of liquidated damages as provided by the FLSA, MWHL; MWPCL; MEPA; and Maryland common law, including an award of treble damages if the Court deems so appropriate;

2.    Award Plaintiffs pre- and post-judgment interest at the statutory rate;

3.    Award Plaintiffs expectation damages equal to the unpaid stand-by wages on the breach of contract claim;

4.    In the alternative to contract, award restitution/*quantum meruit* equal to the reasonable value of stand-by service (measured at least by the Pay Plan's two-hours-per-day benchmark);

5.    Award any additional make-whole damages available under state law.

6.    Award Plaintiffs attorneys' fees, costs, and interest pursuant to the FLSA, 29 U.S.C. § 216(b), and pursuant to the MWHL; MWPCL; MEPA; and Maryland common law;

7.    On the FLSA retaliation claim, issue injunctive relief under 29 U.S.C. § 216(b) prohibiting further retaliation and requiring expungement of any retaliatory notations in personnel or internal records;

8.    On the MWHL retaliation claim, issue parallel state-law injunctive relief prohibiting retaliation and requiring expungement of retaliatory notations;

9.    On the MEPA retaliation claim, issue parallel state-law injunctive relief prohibiting retaliation and requiring expungement of retaliatory notations;

10.    Award Plaintiffs further legal and/or equitable relief as this Court deems necessary, just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully Submitted,

/s/ *Robert Tucci*
Robert W.T. Tucci
DMD Bar No. 31356
Gregg Greenberg
DMD Bar No. 17291
ZIPIN, AMSTER, & GREENBERG LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Telephone:    (301) 587-9373
Facsimile:    (240) 839-9142
E-Mail: rtucci@zagfirm.com
            ggreenberg@zagfirm.com

*Counsel for Plaintiffs*